UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

MICHELLE H.,[1]                              )
                                             )
                    Plaintiff,               )
                                             )
            v.                               )          No. 1:21-cv-00257-MJD-SEB
                                             )
KILOLO KIJAKAZI,                             )
                                             )
                    Defendant.               )


**ENTRY ON JUDICIAL REVIEW**


Claimant Michelle H. requests judicial review of the final decision of the Commissioner

of the Social Security Administration ("Commissioner") denying her application for Disability

Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and

Supplemental Security Income ("SSI") under Title XVI of the Act. *See* 42 U.S.C. § 423(d); 42

U.S.C. § 1382. For the reasons set forth below, the Court **REVERSES** and **REMANDS** the

decision of the Commissioner.

**I.   Background**

This matter is Claimant's third request for judicial review of an unfavorable disability

determination. Claimant applied for DIB and SSI on February 6, 2014, alleging an onset of

---

[1] In an attempt to protect the privacy interest of claimants for Social Security benefits, consistent
with the recommendation of the Court Administration and Case Management Committee of the
Administrative Office of the United States Courts, the Southern District of Indiana has opted to
use only the first name and last initial of non-governmental parties in its Social Security judicial
review opinions.

disability as of December 1, 2013. [Dkt. 17-5 at 2, 9.] After Claimant's applications were denied initially and again upon reconsideration, a hearing was held before Administrative Law Judge Dennis Lyndell Pickett on November 18, 2015. [Dkt. 17-2 at 28-70.] ALJ Pickett issued an unfavorable decision on December 1, 2015, and the Appeals Council subsequently denied Claimant's request for review. [Dkt. 17-2 at 10, 2.] Claimant then timely filed a Complaint seeking judicial review of the ALJ's decision. *See* Case No. 1:17-cv-02109-SEB-TAB (S.D. Ind.). On March 30, 2018, District Judge Sarah Evans Barker reversed and remanded the ALJ's decision on the ground that ALJ Pickett failed to give good reasons for discounting a treating physician's opinion.[2] [Dkt. 17-11 at 48.]

Claimant's first remand hearing was held before ALJ Gladys Whitfield on March 14, 2019. [Dkt. 17-10 at 29-49.] ALJ Whitfield issued an unfavorable decision on April 8, 2019, finding that Claimant was not disabled. [Dkt. 17-10 at 2.] Claimant again filed a Complaint seeking review of the ALJ's decision. *See* Case No. 1:19-cv-03339-TAB-JRS (S.D. Ind.). On March 16, 2020, Magistrate Judge Tim A. Baker granted the parties' joint motion to remand with instructions for the Commissioner to reconsider the opinions regarding Claimant's mental limitations, reevaluate the evidence of Claimant's use of a walker, and issue a new decision. *See* [Dkt. 17-24 at 31]. Following this remand order, the Appeals Council issued a decision remanding the case to the ALJ, explaining as follows:

> The claimant filed a subsequent claim for Title XVI disability benefits on June 18, 2019 and was found disabled as of that date. The Appeals Council has reviewed the subsequent determination and concludes it is supported by substantial evidence. Consequently, the Council affirms the determination that the claimant has been disabled since June 18, 2019.

---

[2] Having found that Claimant's initial argument warranted remand, Judge Barker declined to reach Claimant's remaining claim of error. *See* [Dkt. 17-11 at 57].

However, the period prior to June 18, 2019 requires further proceedings. Therefore, the Appeals Council vacates the final decision of the Commissioner of Social Security dated April 8, 2019 and remands this case to an Administrative Law Judge for resolution of the following issues:

The hearing decision does not comply with the federal court remand order dated March 30, 2018, in re-evaluating the opinion evidence from Gina Laite, M.D. In 2015, Dr. Laite opined, in part, the claimant was unable to meet competitive standards to perform at a consistent pace without an unreasonable number and length of rest periods, to deal with work stress, and to deal with stress of semiskilled and skilled work; also, she opined the claimant would be absent from work more than four days per month (Exhibit 14F). The Administrative Law Judge found these limitations unsupported by the record and inconsistent with the report of the claimant's treating physician (Decision, page 12). However, the hearing decision includes a citation to the opinion from the claimant's treating pulmonologist, who repeatedly stated he was opining on her pulmonary condition (Exhibit 34F). Thus, further evaluation of Dr. Laite's opinion is warranted.

Additionally, the hearing decision does not contain an adequate evaluation of opinion evidence from pain and rehabilitation specialist, Dr. Gangadhar. Specifically, Dr. Gangadhar opined the claimant required the use of a walker with wheels in 2016 (Exhibit 31F). The Administrative Law Judge noted this opinion and observations of using a walker in April 2018; further, he cited the record does not document support for use of walker thereafter (Decision, page 11). At issue, the hearing decision is absent rationale for excluding this limitation during the period prior to 2018. Thus, further evaluation of the opinion evidence is required.

[Dkt. 17-24 at 31-32.]

Claimant's second remand hearing was held telephonically, again before ALJ Gladys Whitfield, on August 4, 2020.[3] [Dkt. 17-23 at 95-129.] ALJ Whitfield issued another unfavorable decision on October 2, 2020, finding that Claimant had not been under a disability during the relevant period from December 1, 2013, to June 18, 2019. [Dkt. 17-23 at 2.] Claimant timely

---

[3] The Court notes that ALJ Whitfield did not elicit any testimony from Claimant at her August 4, 2020, hearing. After providing the VE with "the past-relevant work as per the last ALJ decision," ALJ Whitfield stated, "[o]kay, Attorney, did you want to elicit any testimony? We've had, I think, hearings [sic] since 2014." [Dkt. 17-23 at 101-02.] Claimant's representation reminded the ALJ that "those hearings are vacated," and proceeded to elicit thorough testimony. [Dkt. 17-23 at 102.]

filed her Complaint on January 29, 2021, seeking judicial review of ALJ Whitfield's decision once more. [Dkt. 1.]

## II.  Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 423.[4] Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform her past relevant work, but can perform certain other available work, she is not disabled. 20 C.F.R. § 404.1520. Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019).

---

[4] DIB and SSI claims are governed by separate statutes and regulations that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to those that apply to DIB.

In reviewing a claimant's appeal, the Court will reverse only "if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). An ALJ need not address every piece of evidence but must provide a "logical bridge" between the evidence and his conclusions. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). Thus, an ALJ's decision "will be upheld if supported by substantial evidence," which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). This Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Where substantial evidence supports the ALJ's disability determination, the Court must affirm the decision even if "reasonable minds could differ" on whether the claimant is disabled. *Id.*

## III.   ALJ Decision

ALJ Whitfield first determined that Claimant had not engaged in substantial gainful activity since her alleged onset date of December 1, 2013. [Dkt. 17-23 at 8.] At step two, the ALJ found that Claimant had the following severe impairments: "radiation induced pneumonitis/ fibrosis, obesity, residuals of lymphoma cancer, asthma, bipolar disorder, anxiety, headaches, fibromyalgia, basilar artery stenosis, mitral regurgitation, aortic stenosis with valve replacement, spine disease of the lumbar, cervical, and thoracic spines, and chronic obstructive pulmonary disease." [Dkt. 17-23 at 8.] At step three, the ALJ found that Claimant's impairments did not meet or medically equal a listed impairment during the relevant time period. [Dkt. 17-23 at 9.] ALJ Whitfield then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except:
> Frequent pushing, pulling, handling, fingering, and feeling in addition to frequently

reaching forward or to the side. The claimant is capable of no foot controls. The claimant's work is limited to simple routine, repetitive tasks; that is, short cycle work where the same routine tasks are performed over and over again according to set procedures, sequence, or pace with little opportunity for diversion or interruption. The claimant is capable of no complex written or verbal communications; no complex decision making; no tandem tasks or team work [sic]; no fast-paced or assembly-line production requirements. The claimant is capable of no direct interaction with the general public and no more than occasional, brief interaction with co-workers and supervisors. However, she can tolerate normal supervisory interactions, including but not limited to performance appraisals, corrections, instructions, and directives for task completion of simple, routine and repetitive work. The claimant's work can require no more than occasional routine work place [sic] changes or exercising judgment in making work-related decisions commensurate simple, routine and repetitive work. Finally, the claimant's work environment cannot exceed a noise level of "3."

[Dkt. 17-23 at 10-11.]

At step four, ALJ Whitfield found that Claimant was unable to perform any of her past relevant work during the relevant time period. [Dkt. 17-23 at 14.] At step five, relying on testimony from a vocational expert ("VE"), the ALJ determined that Claimant was able to perform jobs that exist in significant numbers in the national economy, such as mail clerk, office helper, cleaner/housekeeper, surveillance system monitor, final assembler, and table worker. [Dkt. 17-23 at 14-15.] Accordingly, ALJ Whitfield concluded that Claimant was not disabled during the relevant time period from December 1, 2013, to June 18, 2019. [Dkt. 17-23 at 15.]

## IV.  Discussion

On her third request for judicial review, Claimant argues that the ALJ erred by once again improperly evaluating the treating source opinion evidence. [Dkt. 20.] The Commissioner responds that ALJ Whitfield provided "good reasons" for discrediting the medical opinions. [Dkt. 23 at 12.] For the reasons detailed below, the Court agrees with Claimant that ALJ Whitfield did not provide adequate reconsideration of the medical opinions, as directed to do by the Appeals Council, and thus the ALJ's decision requires remand.

As an initial matter, there is an overarching issue with the ALJ's decision that warrants highlighting. As noted, on May 21, 2020, the Appeals Council vacated ALJ Whitfield's prior decision in this case and instructed the ALJ on remand (who happened to be ALJ Whitfield again) to "issue a new decision" resolving certain deficiencies. [Dkt. 17-24 at 31-32.] Despite this, ALJ Whitfield's new decision isn't entirely new. In fact, ALJ Whitfield did not provide any summary or analysis whatsoever at step two, *see* [Dkt. 17-23 at 8], and later stated that, "[a]s the undersigned's prior decision has a robust, detailed discussion of the relevant evidence submitted to the date of that decision (Ex. 1F-39F), that discussion is incorporated by reference." [Dkt. 17-23.] Critically, since the prior discussion was explicitly vacated, there is nothing to incorporate. Although incorporation by reference is not inherently erroneous, *see Kaddo v. Commissioner of Social Security*, 238 F. Supp. 3d 939, 958 (E.D. Mich. 2017), it certainly does not convince this Court that meaningful reconsideration of Claimant's disability application has taken place. *See Michael M. v. Berryhill*, 2019 U.S. Dist. LEXIS 41722, at *12-13 (S.D. Ind. Feb. 22, 2019) (noting that the ALJ's decision, in which he "incorporate[d] by reference" all the evidence discussed in the prior decision, "reads as one that is focused primarily on giving reasons why [the claimant's] statements . . . should not be credited"). As discussed, at length, below, the remainder of ALJ Whitfield's decision does nothing to improve the Court's confidence in that regard.

## A.  The ALJ Erred by Failing to Properly Evaluate the Medical Opinion Evidence

As set forth in 20 CFR § 404.1527(b) and 20 CFR § 404.927(b), an ALJ must consider all relevant evidence in the case record, including opinions from "acceptable medical sources" and medical sources who are not "acceptable medical sources." SSR 06-03p.[5] For claims filed prior

---

[5] Although Social Security Rule 06-03p has been rescinded, it is still applicable in cases, like here, where the Claimant filed for benefits before March 27, 2017.

to March 27, 2017, an ALJ is required to give a treating source's opinion controlling weight as long as it is supported by "medically acceptable clinical and laboratory diagnostic techniques," and is "not inconsistent" with substantial evidence in the record. 20 CFR § 404.1527(c)(2); *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010). Only "acceptable medical sources," such as licensed physicians or psychologists, can be considered treating sources whose opinions may be entitled to controlling weight. SSR 06-03p. If an ALJ decides not to give controlling weight to the opinion of a treating physician,

> an ALJ must offer "good reasons" for doing so, after having considered: (1) whether the physician examined the claimant, (2) whether the physician treated the claimant, and if so, the duration of overall treatment and the thoroughness and frequency of examinations, (3) whether other medical evidence supports the physician's opinion, (4) whether the physician's opinion is consistent with the record, and (5) whether the opinion relates to the physician's specialty. *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010) (citing 20 C.F.R. § 404.1527(d)(2)); 20 C.F.R. § 404.1527(c).

*Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016); *see Ray v. Saul*, 861 Fed. App'x 102, 105-06 (7th Cir. 2021) ("While we will not vacate or reverse an ALJ's decision based solely on a failure to expressly list every checklist factor, we do expect the ALJ to analyze the treating source's medical opinion 'within the multifactor framework delineated' in the regulation.") (citing *Karr v. Saul*, 989 F.3d 508, 512 (7th Cir. 2021); *Gerstner v. Berryhill*, 879 F.3d 257, 263 (7th Cir. 2018)).

At issue here are the medical opinions of treating sources Shiva Gangadhar, MD, Ranjeet Singh, MD, and Rachael Holliday, MD, as well as the opinion of Jennifer Sorg, PMHNP, which was counter-signed by Gina Laite, MD.

1. Treating Source Opinions

The Appeals Council found that ALJ Whitfield's first evaluation of evidence pertaining to Claimant's use of assistive devices was deficient, and instructed the ALJ on remand to "[g]ive

further consideration to the treating source opinions pursuant to the provisions of 20 CFR 404.1527 and 416.927 and explain the weight given to such opinion evidence." [Dkt. 17-24 at 32.] This evidence includes the opinions of Dr. Gangadhar, Dr. Singh, and Dr. Holliday, each of whom are considered "acceptable medical sources" and treating sources under the regulations. *See* 20 CFR § 404.1527. The ALJ's reconsideration of the treating source opinions is as follows:

> The AC determined that the undersigned's April 8, 2019 decision was not compliant with the [district court] remand particularly with regard to the re-evaluation of the opinions of Dr. Laite, M.D., and Dr. Gangadhar, M.D.
>
> . . .
>
> Turning to the opinion of Dr. Gangadhar, M.D., the undersigned is also somewhat confused as to the concerns of the AC. Additionally, the AC appears to confuse the opinion of Dr. Gangadhar [sic] requirement of a rollator walker with that of Dr. Wehr, M.D., (Ex. 25A; see Ex. 31F at 2). Notwithstanding, the treatment notes of Dr. Gangadhar from April 2017 to August 2017 documented the claimant's back pain, obesity and dizziness, [sic] during that period required the use of a rollator walker (Ex. 27F at 13-24). However, a follow up with Dr. Gangadhar on November 3, 2017, while repeating (verbatim) the need for a "walker with wheels" he also notes claimant has been ["]able to keep more active, walking more." A reasonable inference would suggest this increased activity and walking was *without* the walker. Similar inconsistencies also occur on [sic] visit dated the [sic] April 19, 2018, when the use of the walker is describes [sic] "prior" and later she was noted to have "normal balance and speed" (Ex. 27F at 1, 3, 9). As noted in the undersigned's prior decision, the remainder of the record does not document consistent use of the rollator walker, not to mention the assessment of a treating physician, Dr. Singh, M.D. (Ex. 1F; Ex. 5F; ex. [sic] 13F; Ex. 34F; Ex., [sic] 35F; Ex. 38F).
>
> While the new evidence shows intermittent citations to the claimant's use of a wheelchair in March and April 2019, there is no additional evidence to support the notion that the claimant has been wheelchair bound (Ex. 44F at 143, 147).

[Dkt. 17-23 at 13] (emphasis in original).

Notably absent from this evaluation is a discussion of the weight ALJ Whitfield assigned to Dr. Gangadhar's opinion, as well as an evaluation of his treating source opinion under the requisite framework—a direct violation of the Appeals Council's remand instructions. Further,

the reasons given for seemingly discrediting Dr. Gangadhar are a gross mischaracterization of the medical evidence.

Pain and rehabilitation specialist Dr. Gangadhar treated Claimant for her chronic back pain and chronic fibromyalgia pain nine times between January 2017 and April 2018. Upon each physical examination, Dr. Gangadhar opined that Claimant "[r]equires the use of a walker with wheels." *See* [Dkt. 17-16 at 350, 346, 342, 338, 334; Dkt. 17-17 at 324, 320, 316, 312]. Dr. Gangadhar often provided additional commentary regarding Claimant's use of an assistive device. *See*, *e.g.*, [Dkt. 17-16 at 348] ("[f]unctionally, she ambulates with a rolling walker due to poor balance"); [Dkt. 17-16 at 344] ("[f]unctionally, [Claimant] continues to walk with a walker, has not had any falls"); [Dkt. 17-16 at 336] ("[s]he is walking more, using a cane now"); [Dkt. 17-17 at 322] ("has had car issues, has had to do more walking. She continues to use walker, no falls").

However, ALJ Whitfield takes issue with Dr. Gangadhar's notes from two visits. On November 3, 2017, Dr. Gangadhar opined that Claimant "has been able to keep more active, walking more. She does continue with pain in the low back. Worse with prolonged standing." [Dkt. 17-17 at 318.] The ALJ highlighted this, stating, "[a] reasonable inference would suggest this increased activity and walking was *without* a walker." [Dkt. 17-23 at 13] (emphasis in original). The Court agrees with Claimant that, "[g]iven that the note again calls for the need for a walker, and also notes that Plaintiff is walking more for exercise, the far more reasonable assumption is that Plaintiff was ***using the walker for walking***." [Dkt. 20 at 27] (emphasis in original). If ALJ Whitfield believed Dr. Gangadhar's medical notes needed clarification, she could have—and should have—requested supplemental information from him.

ALJ Whitfield then asserted that "[s]imilar inconsistencies also occur on [sic] visit dated the [sic] April 19, 2018, when the use of the walker is describes [sic] 'prior' and later she was noted to have 'normal balance and speed.'" [Dkt. 17-23 at 13.] In reality, on April 19, 2018, Dr. Gangadhar indicated that Claimant "does not feel well past couple days, with increased cough, fatigue. Afebrile. Prior to this, she had been walking with a walker, not typically falling." [Dkt. 17-17 at 310.] His use of the word "prior" therefore clearly does not mean that Claimant no longer required a walker, but rather, plainly implies that she had not been very active due to her illness. ALJ Whitfield's choice to grossly mischaracterize this evidence is disappointing at best. *See Golembiewski v. Barnhart*, 322 F.3d 912, 916-17 (7th Cir. 2003) ("The ALJ must evaluate the record fairly," which includes a duty not to mischaracterize evidence").

Turning next to the opinion of Dr. Singh, the ALJ once again distorts his opinion in order to use it to undercut the other medical opinions of record. Dr. Singh, Claimant's treating pulmonologist, provided a statement on January 28, 2019, in which he opined that Claimant's radiation-induced pneumonitis was stable, though causing dyspnea on exertion. [Dkt. 17-21 at 64-68.] He stated that Claimant was not taking any medications, but that finding is directly contradicted by Dr. Singh's own treatment records. *See*, *e.g.*, [Dkt. 17-17 at 369] (Dr. Singh's treatment notes from October 12, 2018, listing 19 medications Claimant was taking); [Dkt. 17-22 at 56] (Dr. Singh's treatment notes from February 19, 2019, listing 16 medications Claimant was taking). Dr. Singh also reported that Claimant did not experience pain from her pulmonary disease, and that she did not require an assistive device. [Dkt. 17-21 64, 66.] Twice now, ALJ Whitfield has used this statement to undermine the overwhelming evidence that Claimant used an assistive device—whether a walker, a wheelchair, or a cane—by ignoring the fact that Dr. Singh repeatedly limits his opinion to solely focus on Claimant's pulmonary issues, *i.e.*, her

**pulmonary issues** did not result in the need for an assistive device. The ALJ's use of this opinion to undercut other evidence on the subject of assistive devices is therefore erroneous. Indeed, the Appeals Council pointed out this flaw in ALJ Whitfield's reasoning when vacating her prior decision. *See* [Dkt. 17-24 at 31] ("the hearing decision includes a citation to the opinion from the claimant's treating pulmonologist who repeatedly stated he was opining on her pulmonary condition"). In any case, ALJ Whitfield again fails to assign a weight to Dr. Singh's opinion and does not discuss it other than the single sentence in which she uses his opinion to discredit Dr. Gangadhar.

Additionally, the ALJ's statements that the "record does not document consistent use of the rollator walker," and despite "new evidence show[ing] intermittent citations to the claimant's use of a wheelchair in March and April 2019, there is no additional evidence to support the notion that the claimant has been wheelchair bound," [Dkt. 17-23 at 13], are fundamentally incorrect.[6] In reality, there is ample documentation of Claimant requiring assistive devices throughout the record. *See* [Dkt. 17-21 at 3] (February 5, 2016: Dr. Wehr-Dowland first prescribing Claimant a "rollator with seat due to back pain and hip pain"); [Dkt. 17-21 at 95] (April 12, 2016: physical therapist David Edwards reporting that Claimant was "[v]ery limited in terms of community ambulation due mainly to severe hip and back pain," and that she "[o]ccasionally uses a rollator which she uses if she is in a lot of pain."); [Dkt. 17-15 at 112-13] (September 13, 2016: Jeffrey Meglin, MD, noting that Claimant "has rolling walker" but was inquiring about getting a cane to use when the rollator was inconvenient, for example, when the

---

[6] A claimant need not be "wheelchair bound" for an assistive device to be medically necessary. The regulations define an assistive device as "any device that you use to improve your stability, dexterity, or mobility," and state that "[w]e do not require that you have a specific prescription for the assistive device." 20 CFR Part 404 Appendix 1 of Subpart P, 1.00C6a.

"elevator out of order at food stamp office"; with regard to Claimant's "unsteadiness on feet," opining that "I think a cane might be reasonable but will need to discuss this with Dr. Dellinger as well"; referring Claimant to Durable Medical Equipment for "[tr]ying to get cane to help with ambulation"); [Dkt. 17-15 at 106] (October 26, 2016: Claimant's primary care physician, Carol Dellinger, MD, noting on general examination that Claimant "has cane"); [Dkt. 17-15 at 100-01] (November 16, 2016: Dr. Wehr-Dowland noting that Claimant was "having trouble using her rollator due to decrease in hand grip"; with regard to Claimant "fall[ing] frequently," inquiring "if we can get her a new walker"); [Dkt. 17-16 at 51-53] (January 4, 2017: neurologist James Grogan, MD, documenting that Claimant "still has rollator walker, a cane, and uses a traditional non-wheeled walker, but is still unstable," and that "with her walker has only fallen 1 month ago, but none since"; noting that Claimant "stands with assistance, gait is unsteady, stiff legged at the knees"); [Dkt. 17-15 at 79] (April 6, 2017: Lindsey Moore-Ostby, MD, noting that Claimant "uses walker due to pain, would prefer wheelchair. Will discuss with PCP further"); [Dkt. 17-21 at 26] (July 2, 2018: cardiologist Elisabeth VonDerLohe, MD, noting that Claimant "has quite a bit of balance problems and is walking with a walker or using a wheelchair"); [Dkt. 17-22 at 18] (December 17, 2018: Jennifer Sorg, PMHNP, documenting that Claimant was "in wheelchair as she has felt unstable ambulating"); [Dkt. 17-22 at 10] (January 22, 2019: Dr. Holliday noting that, due to Claimant's weakness, "will get wheelchair to allow her to leave the house more"); [Dkt. 17-22 at 6] (February 7, 2019: Dr. Holliday noting that Claimant attended her pulmonary function test "in wheelchair"); [Dkt. 17-34 at 149] (March 5, 2019: with regard to Claimant's muscular deconditioning, Dr. Holliday opining that Claimant "requires the use of a wheelchair in her home related to multiple comorbidities"); [Dkt. 17-34 at 144] (April 10, 2019: with regard to Claimant's "unsteadiness on feet," Dr. Holliday noting that Claimant "still does not have

wheelchair. Will have nursing look into this"); [Dkt. 17-34 at 128] (May 28, 2019: Katherine

Hafer, PMHNP, noting that Claimant was "in wheelchair and on oxygen").[7]

Moreover, as Claimant points out, ALJ Whitfield did not even mention the treating

source opinion of Dr. Holliday. On March 5, 2019, Dr. Holliday stated:

> Pt requires the use of a wheelchair in her home related to multiple comorbidities.
> (Has been deconditioned due to worsening weakness when she was acutely
> decompensating from the MV regurgitation and then recovering from her surgery.
> Despite PT she remains unsteady on her feet and runs into walls. Still having trouble
> walking long distances and would benefit from a wheelchair.).

[Dkt. 17-34 at 148.] This opinion should have been considered and assigned weight by the ALJ.

Accordingly, ALJ Whitfield did not comply with the Appeals Council's directives by

failing to assign weight to Claimant's treating source opinions and discuss the reasons for that

weight under the requisite framework. Further, the ALJ provided reasons for discrediting some

portions of the treating source opinions that are not based on substantial evidence. These errors

require remand.

2.  Other Medical Opinions

The ALJ was also instructed to give fresh consideration to the joint opinion of

Psychiatric-Mental Health Nurse Practitioner Jennifer Sorg ("NP Sorg") and Gina Laite, MD. As

an initial point, Dr. Laite's relationship to Claimant is unclear, as Dr. Laite does not appear in any

of Claimant's medical records other than when she counter-signed NP Sorg's Mental Residual

Functional Capacity Questionnaire. As Judge Barker noted when remanding Claimant's case the

first time, "[p]erhaps Dr. Laite was a supervising physician over Ms. Sorg? All that the record

appears to show is that Dr. Laite concurred with the opinion given at Exhibit 14F." [Dkt. 17-11

---

[7] Although the Appeals Council determined that Claimant was disabled as of June 19, 2019,
evidence submitted from beyond that date also shows Claimant's use of a wheelchair. *See* [Dkt.
17-34 at 102, 72, 59, 74, 47, 26].

at 52 n.4.] Because there is a clear examining relationship between Claimant and NP Sorg, the Court will focus on NP Sorg's opinion, while recognizing that Dr. Laite concurred with and counter-signed the opinion.

That said, for claims filed before March 27, 2017, nurse practitioners are not considered "acceptable medical sources" who may provide treating source opinions. Nonetheless, medical sources who are not considered "acceptable medical sources," such as nurse practitioners and licensed clinical social workers, may still provide evidence "to show the severity of the individual's impairment(s) and how it affects the individual's ability to function." SSR 06-03p.

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

SSR 06-03p. This understanding is evidenced by the post-March 27, 2017, change to the regulations in which licensed advanced nurse practitioners are now considered "acceptable medical sources." 20 CFR § 404.1502(a)(7). Although the factors enumerated in 20 CFR 404.1527(d) explicitly apply only to the evaluation of medical opinions from "acceptable medical sources," these same factors represent basic principles that can be applied to opinion evidence from other medical sources.[8] Those factors are: (1) how long the source has known and

---

[8] Regarding opinions from medical sources who are not considered "acceptable medical sources," the regulations provide the following:

> Opinions from medical sources who are not acceptable medical sources and from nonmedical sources may reflect the source's judgment about some of the same issues addressed in medical opinions from acceptable medical sources. Although we will consider these opinions using the same factors as listed in paragraph (c)(1)

how frequently the source has seen the individual; (2) how consistent the opinion is with other evidence; (3) the degree to which the source presents relevant evidence to support an opinion; (4) how well the source explains the opinion; (5) whether the source has a specialty or area of expertise related to the individual's impairment(s), and (6) any other factors that tend to support or refute the opinion.

With this understanding in mind, the Court turns to NP Sorg's opinion and relationship with Claimant. Carol Dellinger, MD, was Claimant's primary care physician throughout the relevant time period. Between February 2014 and January 2015, Dr. Dellinger treated Claimant for her bipolar disorder and anxiety disorder at least 15 times. *See*, *e.g.*, [Dkt. 17-7 at 343, 341, 340, 339, 337, 336, 335, 334, 332, 329, 328, 326, 323, 321, 320.] Sometimes this mental health treatment was provided solely by Dr. Dellinger; other times it was provided by a Licensed Clinical Social Worker ("LCSW"), such as Sharon Carl or Richard Rogers, under Dr. Dellinger's supervision. Then, on January 6, 2015, Dr. Dellinger referred Claimant to NP Sorg for a medication evaluation due to her bipolar disorder. [Dkt. 17-7 at 320.]

---

through (c)(6) in this section, not every factor for weighing opinion evidence will apply in every case because the evaluation of an opinion from a medical source who is not an acceptable medical source or from a nonmedical source depends on the particular facts in each case. Depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an acceptable medical source or from a nonmedical source may outweigh the medical opinion of an acceptable medical source, including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an acceptable medical source if he or she has seen the individual more often than the treating source, has provided better supporting evidence and a better explanation for the opinion, and the opinion is more consistent with the evidence as a whole.

20 CFR § 404.1527(f)(1).

NP Sorg ultimately treated Claimant at least 11 times: once in January 2015, [Dkt. 17-7 at 315], once in February 2015, [Dkt. 17-7 at 307], once in April 2015, [Dkt. 17-7 at 298], once in July 2015, [Dkt. 17-7 at 290], once in August 2015, [Dkt. 17-7 at 285], once in November 2015, [Dkt. 17-9 at 29], once in October 2017, [Dkt. 17-17 at 291], once in January 2018, [Dkt. 17-17 at 275], once in April 2018, [Dkt. 17-17 at 261], once in December 2018, [Dkt. 17-22 at 18], and once in March 2019, [Dkt. 17-34 at 150]. Importantly, Claimant continued to see Dr. Dellinger, various LCSWs, and additional Psychiatric-Mental Health Nurse Practitioners ("PMHNP") for her mental health treatment consistently after her initial meeting with NP Sorg. In fact, it appears that most of Claimant's physical appointments were followed by a 30-minute mental health appointment. The record thus contains dozens of appointments where Claimant was treated for her bipolar and anxiety disorders. Most importantly, no matter the provider, the medical evidence is consistent.

On November 16, 2015, NP Sorg completed a Mental Residual Functional Capacity Questionnaire, which was counter-signed by Gina Laite, MD.[9] [Dkt. 17-9 at 24-28.] NP Sorg noted that Claimant was working to stabilize her depression and anxiety, but was "likely to continue to have breakthrough symptoms" and was "unlikely to recover fully." [Dkt. 17-9 at 24.] NP Sorg identified Claimant's symptoms, in relevant part, as generalized persistent anxiety, mood disturbance, persistent disturbances of mood or affect, intense and unstable interpersonal relationships and impulsive and damaging behavior, emotional lability, short-term memory impairment, and recurrent severe panic attacks occurring at least once a week on average. [Dkt. 17-9 at 25.] She noted that Claimant was "seriously limited, but not precluded," with regard to

---

[9] The bottom of the Questionnaire states the following: "Social Security will give greater weight to opinions signed by Ph.D.'s, M.D.'s, or D.O.'s. Please have a doctor review this form and counter-sign it, if he/she concurs with the above." [Dkt. 17-9 at 28.]

remembering work-like procedures, completing a normal workday and workweek without interruptions from psychologically-based symptoms, understanding and remembering detailed instructions, carrying out detailed instructions, and setting realistic goals or making plans independently of others, and was "unable to meet competitive standards" with regard to performing at a consistent pace without an unreasonable number and length of rest periods, dealing with normal work stress, and dealing with the stress of semiskilled and skilled work. [Dkt. 17-9 at 26-27.] NP Sorg additionally stated that Claimant's psychiatric condition is exacerbated by her fibromyalgia pain and back pain, and that Claimant would likely be absent from work more than four days per month. [Dkt. 17-9 at 27-28.]

In vacating ALJ Whitfield's prior decision, the Appeals Council instructed the ALJ to reconsider this opinion. On remand, ALJ Whitfield stated the following:

> The AC determined that the undersigned's April 8, 2019 decision was not compliant with the [district court] remand particularly with regard to the re-evaluation of the opinions of Dr. Laite, M.D., and Dr. Gangadhar, M.D.
>
> Although stated above, the undersigned reaffirms the assessment from the April 8, 2019 decision. Perhaps the phrasing "the opinion is given considerable weight to the extent it is supported by substantial evidence" is too vague (Ex. 24A at 15). To be more succinct, this opinion is simply not supported by the substantial evidence either prior too [sic] or subsequent to the date of this opinion, November 16, 2015 (Ex. 14F). Moreover, the opinion itself while appearing inconsistent with the mental health treatment just prior to that time (see, Ex. 10F at 4-6), has a number of countervailing issues. First, this treatment most proximal to the time of the source statement of Ms. Sorg, cosigned by Dr. Laite, *was not provided by either Ms. Sorg or Dr. Laite*, but by clinician/social worker, Mr. Rogers ostensibly under the guidance of Dr. Dellinger, M.D. Furthermore, this treatment appears to be more focused on marital counseling as opposed to any significantly limiting personal condition (Ex. 17F at 27-34). Second, I noted the claimant's mental health treatment subsequent to this opinion is [sic] question is rather sporadic and most of which is not provided by either Ms. Sorg or Dr. Laite (Ex. 17F at 1-30; Ex. 25F at 6-7, 32-33; Ex. 28F at 1-6, 10-15; Ex. 38F at 17-19). Third, in addition to the aforementioned "treatment" documenting very little support for the severity suggested, this opinion is conclusory and speculative, particularly with regard to the absence from work more than four (4) days per month. Finally, in the alternative, aside from the aforementioned four (4) day restriction, even if one were

to consider Dr. Laite's opinion as supportable, her assessment of the claimant's limitation of being "unable to meet competitive standards" when "dealing with stress of semiskilled and skilled work" was (and is) accommodated by the undersigned [sic] limitation to simple and repetitive tasks, i.e., unskilled work.

[Dkt. 17-23 at 13] (emphasis in original).

Most troubling here is the ALJ's insistence on "reaffirming" her prior decision, despite recognizing that the Appeals Council found that opinion so deficient as to warrant vacating it. In fact, the ALJ once again failed to comply with the Appeals Council's directives by not clearly assigning a weight to NP Sorg's opinion and explaining the reasons for doing so. Instead, ALJ Whitfield discredits NP Sorg's opinion for a multitude of reasons, none of which constitute "good reasons" for doing so.

The ALJ first states that this opinion is not supported by substantial evidence and is inconsistent with Claimant's prior mental health treatment. However, ALJ Whitfield does not point to any specific inconsistencies, and the Court's review of the entire record has not revealed any. To the contrary, there is ample documentation, both before and after NP Sorg's assessment, of Claimant's **persistent anxiety**, *see*, *e.g.*, [Dkt. 17-7 at 343] (Dr. Dellinger documenting Claimant's anxiety disorder), [Dkt. 17-7 at 315], 307, 298, 290, 285] (NP Sorg documenting Claimant's anxiety disorder), [Dkt. 17-7 at 305] (LCSW Carl documenting Claimant's anxiety disorder), [Dkt. 17-17 at 361] (LCSW Rogers documenting Claimant's anxiety), [Dkt. 17-34 at 137] (Dr. Holliday documenting Claimant's "severe anxiety"); **mood and affect disturbances**, *see*, *e.g.*, [Dkt. 17-7 at 343] (Dr. Dellinger documenting Claimant's mood/affect as dysphoric and tearful), [Dkt. 17-7 at 335] (Dr. Dellinger documenting Claimant's mood/affect as dysphoric and flat), [Dkt. 17-9 at 17] (LCSW Tina Flack documenting Claimant's hyper mood), [Dkt. 17-17 at 275] (NP Sorg documenting Claimant's mood/affect as dramatic), [Dkt. 17-22 at 33] (Michael Foster, MD, documenting Claimant's mood/affect as anxious, dysphoric, and intense); **emotional**

**lability**, *see*, *e.g.*, [Dkt. 17-15 at 198] (LCSW Rogers documenting Claimant's mood as irritable, anxious, and tense, and her affect as exaggerated); [Dkt. 17-15 at 180] (LCSW Rogers documenting Claimant's mood as elevated and expansive, and her affect as exaggerated and labile), [Dkt. 17-17 at 291] (NP Sorg documenting Claimant's mood/affect as anxious and distraught); **panic attacks**, *see*, *e.g.*, [Dkt. 17-7 at 315, 307; Dkt. 17-17 at 275, 261; Dkt. 17-34 at 150] (NP Sorg documenting Claimant's reoccurring panic attacks), [Dkt. 17-22 at 33] (Dr. Foster documenting that Claimant's panic attacks were improving with Xanax), [Dkt. 17-34 at 140, 137] (Dr. Holliday documenting Claimant's panic attacks); and **memory impairment**, *see*, *e.g.*, [Dkt. 17-7 at 339] (LCSW Carl documenting Claimant's worsening memory), [Dkt. 17-7 at 338] (Dr. Dellinger documenting that Claimant was having trouble remembering things), [Dkt. 17-17 at 291] (NP Sorg documenting that Claimant's recent memory was impaired), [Dkt. 17-34 at 148, 144, 130, 137] (Dr. Holliday documenting Claimant's memory loss). ALJ Whitfield's determination that NP Sorg's opinion was unsupported and inconsistent is thus blatantly unfounded.

The ALJ additionally asserts that Claimant's subsequent mental health treatment was "rather sporadic." This is not true. From November 16, 2015—the date NP Sorg completed the Questionnaire—to June 19, 2019—the date Claimant was found to be disabled by the Appeals Council—the Court notes at least 30 mental health appointments provided at either Barrington Health Center or Southeast Health Center, both subsets of Health Net. *See*, *e.g.*, [Dkt. 17-15 at 202, 200, 198, 194, 192, 190, 188, 184, 182, 180, 175; Dkt. 17-17 at 364, 361, 359, 355, 353] (LCSW Rogers, supervised by Dr. Dellinger); [Dkt. 17-15 at 196, 357] (LCSW Rogers, supervised by Dr. Meglin); [Dkt. 17-15 at 177] (LCSW Rogers, supervised by Dr. Moore-Ostby); [Dkt. 17-17 at 291, 275, 261; Dkt. 17-22 at 18; Dkt. 17-34 at 150] (NP Sorg); [Dkt. 17-

17 at 351] (LCSW Rogers, supervised by Dr. Holliday); [Dkt. 17-22 at 33] (Dr. Foster); [Dkt. 17-33 at 80, 78] (LCSW Rita White, supervised by Tara Wesner, PMHNP); [Dkt. 17-34 at 140] (Dr. Holliday); and [Dkt. 17-34 at 128] (Katherine Hafer, PMHNP). This can hardly be categorized as sporadic. Most importantly, as detailed above, Claimant's providers continually had consistent evaluations of Claimant's bipolar and anxiety disorders.

Considering this evidence, it is clear that NP Sorg's opinion is both supported by the record as a whole and is consistent with her own treatment notes as well as those from other providers. The ALJ's decision therefore requires remand on the ground that her rejection of NP Sorg's opinion is not based on substantial evidence.

In sum, ALJ Whitfield once again failed to properly evaluate the treating source opinions of Dr. Gangadhar, Dr. Holliday, and Dr. Singh, and her reasons for discrediting the opinion of NP Sorg are not based on substantial evidence. These errors demand a third remand.[10]

As a final point, ALJ Whitfield should not preside over Claimant's case again. "Given all that has been said here, it is an understatement to find it highly doubtful that the same ALJ could carry out the obligation to produce the required full and fair record on remand." *Smith v. Massanari*, 2001 U.S. Dist. LEXIS 12487, at *14 (N.D. Ill. Aug. 15, 2001). Indeed, "[t]he tone of the administrative law judge's opinion suggests that she may have an unshakable commitment to the denial of this applicant's claim." *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996). Such is the case here.  Therefore, the **Court instructs the Commissioner to transfer the case to a different ALJ on remand**.

---

[10] Claimant additionally argues that the ALJ failed to properly incorporate Claimant's concentration-related limitations in her RFC determination. [Dkt. 20 at 30.] The Court need not address this argument but, on remand, the Commissioner shall be sure that **all** of Claimant's limitations, including those of concentration, persistence, or pace, are fully accounted for in the RFC determination.

## V.   Conclusion

For the reasons set forth above, the Commissioner's decision is **REVERSED and**

**REMANDED** for further proceedings consistent with this Order. Additionally, the

Commissioner shall ensure that a different ALJ presides over Claimant's case on remand.

SO ORDERED.

Dated:  25 MAR 2022

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically
on all ECF-registered counsel of record via
email generated by the Court's ECF system.